UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | CRIMINAL NO. **04CR 10230 JLT** |
| ) | |
| v. ) | VIOLATIONS: |
| ) | |
| CHARLES PATEL, JR. ) | 18 U.S.C. § 1344(1) (Bank Fraud) |
| a/k/a CHANDRAKANT PATEL, JR. ) | 18 U.S.C. § 982(a)(2)(A) (Criminal |
| a/k/a CHANDU PATEL ) | Forfeiture) |
| a/k/a CHANDO PATEL ) | |
| ) | |

INDICTMENT

The Grand Jury Charges:

INTRODUCTION

At times material to this indictment:

1.  Defendant CHARLES PATEL, JR., a/k/a CHANDRAKANT PATEL, JR., a/k/a CHANDU PATEL, a/k/a CHANDO PATEL ("PATEL"), was an individual living in California.

2.  PATEL was the CEO of Guacamole's Cantina, Inc. and the President of B.N.J. Restaurants, Inc., both California corporations. He also owned Milanos Italian Kitchen, a restaurant at 47 Newbury Street, Boston, Massachusetts.

3.  PATEL controlled the Guacamole's Cantina accounts at Bank Boston, in Boston, Massachusetts ("the Bank Boston account"), at Wells Fargo Bank, in San Carlos, California ("the Wells Fargo account"), and at Pan American Bank, in San Carlos,

California ("the Pan American account"). He also controlled the B.N.J. Restaurants, Inc. account at Citizens Bank, in Boston ("the Citizens Account").

4. PATEL's distant relative and business partner, Manojkumar Patel, controlled the Big Red Bird account at Carolina First Bank, in Columbia, South Carolina ("the Carolina First Account"). Manojkumar Patel made deposits into and wrote checks out of this account when PATEL instructed him to do so.

5. Bank Boston, Wells Fargo, Pan American, Citizens, and Carolina First ("the five banks") were all banks whose deposits the Federal Deposit Insurance Corporation ("FDIC") insured.

6. The five banks all had similar systems for processing checks deposited into their accounts. The bank at which the customer deposited the check would forward it to a processing center, which would then present the check to its bank of origin. The bank of origin would then transfer the dollar amount written on the check from the check writer's account to the bank where the check was deposited, and the check would "clear." There was generally a delay of several days between the deposit date and the date the check cleared.

7. It was the practice of the five banks to give established commercial accounts next-day credit for checks deposited into those accounts, without waiting for the checks to clear. In doing so, the banks were crediting the customer before verifying that the check writer's account had a sufficient balance to allow the check-writer's bank to

honor the check. The five banks extended this kind of next-day credit to PATEL's business accounts.

8. Taking advantage of the banks' credit policies, PATEL executed the first portion of his "check kite" scheme during the approximately one-month period between early January, and early February, 1999. By writing and depositing approximately 67 checks back and forth between the Bank Boston and Wells Fargo accounts during this one-month period, PATEL was able to fraudulently inflate his balance at both banks, thereby misrepresenting the amount of money available in his accounts. During the period that his check kiting had inflated the bank balances, PATEL transferred out of these two accounts money that he later took as cash or used to pay various expenses. When the banks discovered PATEL's check kite scheme, Bank Boston was left with a loss of approximately $171,273.

9. After Bank Boston and Wells Fargo discovered the check kite scheme, PATEL agreed to repay to Bank Boston the $171,273 he had fraudulently obtained. From February 1999 through May 1999, PATEL did repay approximately $90,759 of this money. He made no further payments, however, and never repaid the remaining $80,514 that he had fraudulently obtained.

10. The payments PATEL did make to Bank Boston from February 1999 through May 1999 all came in the form of checks from the Pan American account. At approximately the time PATEL made his last payments to Bank Boston, May 1999, he

began the second phase of his check kite scheme, by writing and depositing, or causing others to write and deposit checks back and forth between the Pan American, Citizens, and Carolina First accounts. In doing so, PATEL was able to fraudulently inflate the balances in all three accounts, thereby misrepresenting the amount of money available in each account.

11. When Pan American Bank closed his account because of concerns about check kiting, PATEL continued kiting in the Citizens and Carolina First accounts.

## COUNT ONE
## Bank Fraud
## (18 U.S.C. §1344(1))

12.     The Grand Jury realleges and incorporates by reference the allegations set forth in paragraphs 1- 11 above, and further charges:

13.     Between approximately January, 1999 and approximately February, 1999, in the District of Massachusetts and elsewhere,

## CHARLES PATEL, JR.
## a/k/a CHANDRAKANT PATEL, JR.
## a/k/a CHANDU PATEL
## a/k/a CHANDO PATEL

knowingly executed and attempted to execute a scheme to defraud Bank Boston and Wells Fargo Bank, both federally insured financial institutions.

14.     PATEL accomplished this scheme by the following means:

a.     He wrote checks from the Bank Boston account knowing that the true balance in the account would be insufficient to cover the checks when they were presented to the bank for payment.

b.     PATEL deposited, and caused to be deposited, the checks he wrote from the Bank Boston account into the Wells Fargo account, knowing that Wells Fargo would immediately credit the account for these deposits.

c.  PATEL would then write checks from the Wells Fargo account knowing that the true balance in the account would be insufficient to cover the checks when they were presented to the bank for payment.

d.  PATEL deposited, and caused to be deposited, the checks he wrote from the Wells Fargo account into the Bank Boston account, knowing that Bank Boston would immediately credit the account for these deposits.

e.  PATEL synchronized his deposit of Wells Fargo checks into the Bank Boston account so that, when Bank Boston immediately credited his account for these deposits, the account would appear to have a balance high enough to cover the Bank Boston checks he had deposited at Wells Fargo.

f.  Similarly, PATEL synchronized his deposit of Bank Boston checks into the Wells Fargo account so that, when Wells Fargo immediately credited his account for these deposits, the account would appear to have a balance high enough to cover the Wells Fargo checks he had deposited at Bank Boston.

g.  In this way, PATEL was able to artificially inflate his balances and materially misrepresent the amount of money available in his accounts. The banks, therefore, honored the checks that PATEL wrote during the kite period, even though his accounts did not actually have funds to cover them.

h.  From approximately January 1, 1999 through February 3, 1999, PATEL deposited approximately $2,066,726 into the two accounts, of which

      approximately $1,911,294, or more than 92%, came from checks written and deposited back and forth between the two accounts.

i.      By creating the false appearance that his accounts had money in them when in fact they did not, PATEL was able to withdraw money from his accounts although they actually had negative balances. In this way, he obtained and used money belonging to Bank Boston and Wells Fargo. He transferred this money to other accounts he controlled and then withdrew some of it as cash and used the rest for various expenses.

j.      When the banks discovered PATEL's check kite scheme, Bank Boston was left with a loss of approximately $171,273.

All in violation of 18 U.S.C. § 1344(1) and 18 U.S.C. § 2.

COUNT TWO
Bank Fraud
(18 U.S.C. §1344(1))

15.     The Grand Jury realleges and incorporates by reference the allegations set forth in paragraphs 1- 11 above, and further charges:

16.     Between approximately May, 1999 and approximately November, 1999, in the District of Massachusetts and elsewhere,

CHARLES PATEL, JR.
a/k/a CHANDRAKANT PATEL, JR.
a/k/a CHANDU PATEL
a/k/a CHANDO PATEL

knowingly executed and attempted to execute a scheme to defraud Pan American Bank, Citizens Bank, and Carolina First Bank, all federally insured financial institutions.

17.     PATEL accomplished this scheme by the following means:

a.      He wrote checks from the Pan American account, knowing that the true balance in this account would be insufficient to cover the checks when they were presented to the originating bank for payment.

b.      PATEL deposited, and caused to be deposited, each check into the Citizens or Carolina First accounts, knowing that the bank into which they were deposited would immediately credit the account for these deposits.

c.      PATEL would then write, and cause others to write checks from the Citizens or Carolina First accounts, knowing that the true balance in these

account would be insufficient to cover the checks when they were presented to the originating bank for payment.

d. PATEL deposited, and caused to be deposited, the checks he wrote from the Citizens or Carolina First accounts into the Pan American account, knowing that Pan American would immediately credit the account for these deposits.

e. PATEL synchronized his deposit of Citizens and Carolina First checks into the Pan American account so that, when Pan American immediately credited his account for these deposits, the account would appear to have a balance high enough to cover the Pan American checks he had deposited at Citizens and Carolina First.

f. Similarly, PATEL synchronized his deposit of Pan American checks into the Citizens and Carolina First accounts so that, when Citizens and Carolina First immediately credited his account for these deposits, the accounts would appear to have a balance high enough to cover the checks he had deposited at Pan American.

g. PATEL followed this pattern of synchronized incoming and outgoing checks with all three accounts – Pan American, Citizens, and Carolina First.

h. In this way, PATEL was able to artificially inflate his balances and materially misrepresent the amount of money available in his accounts. The

        banks, therefore, honored the checks that PATEL wrote during the kite period, even though his accounts did not actually have funds to cover them.

i.      By creating the false appearance that his accounts had money in them when in fact they did not, PATEL was able to withdraw money from his accounts although they actually had negative balances.  In this way, he obtained and used money belonging to Pan American, Citizens, and Carolina First banks.

All in violation of 18 U.S.C. § 1344(1) and 18 U.S.C. § 2

## NOTICE OF ADDITIONAL FACTORS

The Grand Jury further charges:

18. PATEL's bank fraud scheme caused a loss of more than $120,000, as described in U.S.S.G. § 2F1.1(b)(1)(H).

19. PATEL's bank fraud scheme involved more than minimal planning, as described in U.S.S.G. § 2F1.1(b)(2)(A).

20. PATEL's executed his bank fraud scheme while on presentence release, as described in 18 U.S.C. § 3147 and U.S.S.G. § 2J1.7.

## FORFEITURE ALLEGATIONS
## (18 U.S.C. § 982(a)(2)(A))

21.  As a result of the offense in violation of 18 U.S.C. § 1344 charged in Count One of this Indictment, the defendant,

CHARLES PATEL, JR.<br>
a/k/a CHANDRAKANT PATEL, JR.<br>
a/k/a CHANDU PATEL<br>
a/k/a CHANDO PATEL

shall forfeit all property, real and personal, constituting, or derived from, proceeds obtained directly or indirectly, as the result of such violation, up to a value of $80,404.

22.  If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

(1) cannot be located upon the exercise of due diligence;

(2) has been transferred or sold to, or deposited with, a third person;

(3) has been placed beyond the jurisdiction of the Court;

(4) has been substantially diminished in value; or

(5) has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), to seek forfeiture of any other property of said defendant up to the value of the above forfeitable property.

All in violation of 18 U.S.C. § 982.

A TRUE BILL

_____
Foreperson of the Grand Jury


_____
Assistant United States Attorney


DISTRICT OF MASSACHUSETTS                        August ___, 2004

Returned into the District Court by the Grand Jurors and filed.

_____
Deputy Clerk