UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
|       Plaintiff, | ) |
| v. | ) Criminal No. 04-10230-JTL |
| | ) |
| CHARLES PATEL, JR. | ) |
| | ) |
|       Defendant. | ) |

**DEFENDANT'S OPPOSITION TO GOVERNMENT'S MOTION
FOR DETENTION PURSUANT TO 18 U. S. C. §§3142 (e) and (f),
AND MOTION TO SET CONDITIONS OF RELEASE
PURSUANT TO 18 U. S. C. §3142 ©**

Now comes the defendant, Charles Patel, Jr. (Patel), by his attorney, Robert L. Peabody, Esq. of Nystrom, Beckman, & Paris, and respectfully moves this Honorable Court to conduct a detention hearing in accordance with 18 U.S.C. §3142(f) on June 29, 2006.  Thereafter, Patel asks the Court to release him on the proposed conditions set forth below, pursuant to 18 U.S.C. §3142©, because these conditions will "reasonably assure the appearance of [Patel] as required and the safety of ….the community" for the remainder of these proceedings. See United States v. Ploof, 851 F.2d 7, 9 (1st Cir.1987) (judicial officer directed to consider a number of conditions to be attached to release order, pursuant to 18 U.S.C. §3142©, but only if, after hearing, judicial officer finds that no condition or combination of conditions will reasonably assure appearance of defendant and safety of community); and United States v. Pierce, 107 F. Supp. 126, 130-131 (D. Mass 2000), quoting United States v. Salerno, 481 U.S. 739, 747 (1987) (detention prior to trial is carefully limited exception so defendant may be detained only if judicial officer finds by clear and convincing evidence that the Defendant is a danger to the community or, by a preponderance of the evidence, defendant poses a risk of flight).

The Court previously released Patel on a variety of conditions on August 11, 2004 at his initial appearance in this matter -- including imposition of secured and unsecured bonds, electronic monitoring (EM), and other restrictions.  Patel acknowledges that he did not faithfully comply with those restrictions and, as a result, has suffered the embarrassment of arrest and incarceration since April 10, 2006.  Notwithstanding his past conduct, Patel presents the following conditions of release that he contends are appropriately stringent and reliable in the wake of his past conduct in this matter and which will effectively ensure his appearance in Court and compliance with all other directives of the Court until final disposition of this case.

**Patel's proposed conditions of release**

Patel sets forth the following proposed conditions of release:

1. Patel's sister-in-law Bhagyavati M. Patel (spouse of Dr. Michael Patel, defendant's younger brother) will post all the equity – approximately $150,000 – in a residence owned by her.  The property is a single family residence located at 2912 Essie Way, Modesto, CA 95355, and was purchased by Michael Patel and his wife in May 2006.  They expect to close on the property in late June 2006 at which time 100% of the equity in the residence can be used to secure a government mortgage on the property;

2. Patel's spouse, Reema Patel, currently lives at the family residence located at 23 Charthouse Lane, Foster City, CA.  However, Ms. Patel is prepared to move to Boston with the intention of leasing a one bedroom rental apartment at a convenient location within the City of Boston in which she and Patel – if released -- can reside for the duration of all proceedings in this case.

    To that end, contact has been made with two realtors – Mr. Rick Howes of Commonwealth Avenue Associates and Mr. Mike Milko of Winn Real Estate Company to learn the availability of a securing a short-term lease apartment in Boston.  Both companies have told Ms. Patel that they have numerous apartments immediately available for monthly lease, including apartments at 145 North Beacon Street in Brighton, MA (Commonwealth Avenue Associates) and at 48 Border Street in East Boston (Winn Real Estate Company);

3.       Ms. Patel is also prepared to serve as a third party supervisor of Patel, as defined in Title 18 U.S.C. §3142©(B)(i), throughout the period that Patel – if released – is living with her at one of the aforementioned apartments and, if necessary, promptly report any violation of a release condition to the Court. Despite the precarious "release/detention" situation Patel now finds himself in due to non-compliance with the Court's initial conditions of release, Ms. Patel understands that the Court would have zero tolerance for <u>any</u> violation committed by her husband and is prepared to report same to the Court even if it should mean a revocation of his release and his return to custody;

4.       As a condition of Patel's release to a Boston apartment and in the custody of his spouse, Patel would also agree to imposition of electronic monitoring (EM); and

5.       Any other restrictive condition the Court, Pretrial Services, or the prosecution believes is necessary to assure the safety of the community and, more importantly, Patel's appearance in court for the remainder of these proceedings.

**Background**

1.       <u>Patel's August/September 2004 conduct</u>

Patel encountered difficulties with the Court since appearing with counsel for his initial appearance on August 11, 2004. That day, the Court fashioned conditions of release that it believed would be sufficient to assure Patel's appearance and future compliance. In addition to statutory conditions of release, the Court also ordered Patel to post a $50,000 Appearance Bond -- $20,000 of which was secured by a cash payment posted by Patel the same day.[1] Patel's counsel, Michael B. Galvin, Esq. (Galvin), advocated, in part, for Patel's release by apprizing the government and Pretrial Services that Patel suffered from Dementia and Alzheimer related symptoms that had compromised his memory and, generally, his neurological health. The Court considered this and other background information about Patel before setting conditions of release.

---

[1] Patel was also ordered not to secure a passport and reside in California at the residence of him and his wife Reema Patel. Patel was also permitted to travel outside the California as long as he was accompanied his cousin and business associate, Gary Patel, on business trips within the continental United States.

3

Within the month – and, apparently, suspicious of Patel's neurological condition – the government moved to tighten Patel's release conditions by recommending EM based on information from two (2) different sources – United States Probation Officer Esther Davis (Davis) of the Northern District of California, and Maryann Bland (Bland), a Vice President with the Rockport National Bank. In its motion, the government stated that it believed that information learned from Davis and Bland undermined Patel's August 11, 2004 Dementia claim because it showed Patel fully capable of complying with conditions of supervised release (Davis) and competent enough to secure financing from Bland's Rockport National Bank to purchase and operate McT's Lobster House in Gloucester, MA (Bland).[2]

The Davis and Bland statements – FBI 302s -- were made available to the Court as attachments to the government's September 7, 2004 motion and a hearing was scheduled for September 16, 2004, later continued to September 22, 2004, to allow Patel to appear and object to the government's additional request for EM. On September 22, 2004, Galvin appeared on behalf of Patel and reported that Patel would voluntarily consent to EM.[3]

2.    Pretrial Services San Francisco: Officer Victoria Gibson

United States Pretrial Services Officer Victoria Gibson (Gibson) had been assigned previously to supervise Patel following his August 11, 2004 arraignment and met with Patel the day after his Boston arraignment in her San Francisco office. On

---

[2]   Davis indicated that she had no difficulty communicating with or supervising Patel during his supervised release period – "Patel always presented himself as being a very capable and intelligent person." Bland reported that Patel was cogent and responsive during their year-long dealings, and when Bland demanded accelerated payment of the loan and line of credit after learning of Patel's indictment in this case, Patel arranged for full payment of the loans with twelve (12) days, including a $21,000 "pre-payment penalty" the terms of the loan required.

[3] Patel remained in California on September 22, 2004.

4

August 12 Gibson reviewed with Patel the conditions of his release including the condition that permitted Patel to travel within the continental United States with his cousin/business associate, Gary Patel. Gibson even spoke with Gary Patel to assure herself of the propriety of this condition. In the weeks following their meeting, according to Gibson supervision notes, Patel complied with all release conditions.[4]

In early September, Gibson learned from Pretrial Services in Boston that the government had raised an issue concerning Patel's release and that a violation hearing had been scheduled. On September 17, 2004, Gibson and Patel spoke by telephone and Gibson learned from Patel that Galvin would appear at the Boston hearing on his behalf and that Patel would not object to EM.

After the September 22 hearing, Gibson called Patel at home in Foster City, CA to tell him that EM was henceforth a condition of release. Gibson spoke with Patel's spouse, Reema Patel.  Ms. Patel informed Gibson that she had not seen him since the previous Sunday (September 19) and did not know where he was.[5]  Gibson attempted to contact Patel over the next several days leaving voice messages on his cellular telephone to contact her office. Hearing nothing from Patel by September 27, Gibson contact Pretrial Services in Boston to report Patel was not in compliance. An arrest warrant for Patel later issued.

**Argument**

1. <u>Patel regrets his disregard of the Court's Order.</u>

Patel acknowledges his failure to comply with the Court's September 22, 2004 Order to submit to EM, his neglect contacting Gibson at Pretrial Services and, afterwards,

---

[4] Gibson's supervision notes are part of Patel's Pretrial Services file.
[5] According to the government, when government agents visited Patel's Foster City, CA residence on October 14, 2004, Reema Patel related similar information to them.

5

his failure to surrender to the outstanding warrant. Patel does not excuse his conduct after September 22, 2004 and while he resides in the custody of the U.S. Marshal's Service, Patel understands the consequences of his actions.

In no way justifying his behavior, Patel's life was not good during the summer of 2004. Despite some success in the real estate and restaurant business with his father, Chandrakant (Charles) Patel, Sr., in preceding years, Patel had suffered personal and financial losses since 1998. He was indicted for bankruptcy fraud in the Central District of Illinois for conduct arising out of the operation of a dairy. After pleading guilty, Patel served almost three (3) years in federal custody – 24 months with the Bureau of Prisons and 9 months with Immigration and Customs Enforcement (ICE) – and paid victims more than $900,000 in restitution.[6] Within a year of his release, Patel learned the government was investigating him (and his father) again forcing Patel to retain private counsel almost a year before the August 4, 2004 indictment. During this period, his father died.

Upon Patel's return to the Bay Area the day after answering these charges, Patel was disconsolate. Two (2) weeks later on August 24, 2004, Patel was ordered by the Rockport National Bank (Bland) to close all "McT's Lobster House" accounts -- a demand that forced Patel out of the restaurant business for good and, as noted above, prompted a rapid divestiture. The government's subsequent effort to restrict Patel to his residence in Foster City distressed Patel further and triggered arguments with his wife and brother -- Reema and Michael -- and other family members that, eventually, lead to him to disregard the Court's Order to submit to EM.

---

[6] Because of his resident alien status, Patel was required to serve the entire 24 month sentence without any reduction for "good time." Patel also contends that his 9 month incarceration with ICE that followed his 24 months in BOP custody – often a precursor to deportation – was, later, deemed unnecessary as INS decided not to deport him.

 2. <u>Prior to September 22 Patel complied with all previous judicial orders.</u>

**a) Patel's Illinois case**

In his previous federal matter before the Central District of Illinois (Urbana) – <u>United States v. Patel</u>; 98-cr-20040-MPM – Patel complied with <u>all</u> pretrial directives imposed by Magistrate Judge David G. Bernthal. Patel satisfied a $25,000 cash bond and surrendered his passport the day of arraignment (6/19/98). <u>See</u> ILCD Docket # 4 and # 10. (*A copy of the Docket Report in <u>United States v. Patel</u>; 98-cr-20040-MPM is attached hereto as Exhibit A.*) Approximately, two weeks later, Patel posted a deed to real property in Oregon that was owned, in part, by him. <u>See</u> ILCD Docket #16. Patel also agreed to abide by travel restrictions imposed by Magistrate Judge Bernthal. <u>See</u> ILCD Docket #18. After Patel tendered guilty pleas to Counts Two and Three of the indictment (12/14/98), United States District Judge Peter P. McCuskey ordered Patel free on bond pending sentencing and, in doing so, denied the government's motion to detain Patel. <u>See</u> ILCD Docket #26.

Finally, at Patel's sentencing (11/23/99), and in addition to imposing a 24 month sentence, Judge McCuskey ordered Patel to pay a $50,000 fine, a $200 special assessment, and restitution of $915,846.21. <u>See</u> ILCD Docket #37. Patel satisfied the entire restitution amount the day of sentencing and did not object to the transfer of his secured bond towards payment of his fine and assessment. <u>See</u> ILCD Docket #43. Four months later (4/23/02), Patel satisfied the remainder of the fine. <u>See</u> ILCD Docket #54.[7]

---

[7] Patel also completed three (3) years of supervised release under the supervision of Probation Officer Davis without incident. According to Davis, Patel posed no problems during her supervision, followed all conditions of release, and always provided the required monthly reports.

7

**b) This case**

Likewise, when Patel was arraigned in this case (8/4/04), Patel, through counsel, voluntarily reached agreement with the government to post a $50,000 bond -- $20,000 of which was secured by cash. As before, Patel posted the required funds the same day. See DMA Docket # 4. (*A copy of the Docket Report in* United States v. Patel; *04-cr-10230-JLT is attached hereto as Exhibit B.*) Upon his return to the Bay Area the next day, Patel met with the Pretrial Officer Gibson, furnished her with his contact information, and agreed to comply with all of Gibson's directions. Gibson and Patel conferred regularly over the next month as well as during the government's effort in mid-September 2004 to further restrict Patel's release conditions. In particular, when Patel became aware that the government was seeking imposition of EM, he told Gibson on September 17, 2004 that his attorney (Galvin) would appear on his behalf and that he had "no objection" to the new condition.

In sum, from the date of his arraignment in the Illinois matter in June 1998 through the Court's September 22, 2004 Order requiring Patel to submit to EM, Patel had satisfied all restrictions, conditions, fines, and restitution obligations imposed on him by three federal judges in two criminal cases.

3.   Patel's Dementia

The veracity of Patel's claim of dementia and/or Alzheimer symptoms has been an issue in this case and appears to be relevant to whether Patel deserves release or detention at this juncture. From references to Patel's conduct/dealings with the Rockport Savings Bank and Probation Officer Davis in its September 7 submission, the government, apparently, does not believe that Patel suffers from Dementia, Alzheimer's,

8

or other neurological condition and that his injection of mental status into the release/detention discussion in 2004 was a "ploy" to secure more lenient release conditions.

The government's is wrong and has used the Dementia issue unfairly and to undermine Patel's credibility. In June 2004 in an effort to ward off indictment, Patel – through counsel -- furnished the government with a letter from his psychiatrist, Dr. William T. Riley, M.D., documenting Patel's evaluation and treatment for Dementia.[8] Dr. Riley related a "primary medical diagnosis of Dementia…" and noted further that he had prescribed Patel "dementia medications." Dr. Riley also wrote that "Patel lacks capacity to manage his finances and property in his own best interest."[9]

Post indictment, Dr. Riley's diagnosis was pressed again by counsel in the course of negotiating satisfactory release conditions for Patel. However, the government's September 2004 submission that highlights the Bland/Davis statements about Patel's ability to communicate, follow instructions, and transact business suggest that Patel was disingenuous with the government and the Court and that Patel enjoys, essentially, good mental health.

The fact is that Patel does suffer from Dementia, has been prescribed medication to treat it, and has provided the government and Court with Dr. William T. Riley's corroboration to prove it. Patel has never professed – nor does Dr. Riley suggest -- that his Dementia is so advanced that he requires constant care or that it significantly impacts

---

[8] Dr. Riley's June 10, 2004 letter is part of Patel's Pretrial file and was, counsel believes, made available to the Court during initial proceedings in this case. (*A copy of Dr. Riley's June 10, 2004 letter is attached as Exhibit C.*)

[9] Dr. Riley also reported that Patel "…lacks the insight, judgment, capacity to consent to medical treatment or to participate in legal proceedings" – not an issue relevant to these proceedings but certainly to Patel's competency. Whether or not Patel is "competent" to participate fully in these legal proceedings is a matter that the parties intend to address after the release/detention issue is resolved.

his capacity to communicate with others or attend to day-to-day needs. Indeed, Patel arrived for his arraignment in this case unaccompanied on August 11, 2004, presented himself appropriately to the Court, and indicated an understanding of the Appearance Bond and Order Setting Conditions of Release because he executed both documents. The fact that Patel, himself, provided the clerk's office with a cashier's check for $20,000 and was able to return to San Francisco the next day to meet with pretrial services suggests further that, at the time, he was able to function on his own in spite of the onset of Dementia.[10]

**Conclusion**

Patel, respectfully, asks the Court to grant him a "second" chance and allow his motion for release on the conditions listed above. They will ensure his future appearance before the Court as well secure as the safety of the community. Patel's wife's willingness to uproot and move to Boston so that he can be housed (with EM) in Boston and under nearby supervision of Pretrial Services is significant. Brother Michael Patel's wife, Bhagyavati M. Patel, willingness to risk $150,000 of equity in her new house is also significant. Together, these conditions are restrictions that will "keep tabs" on Patel during the remainder of the pretrial phase of this case. More importantly, they represent Patel's family's love and support of him during this obviously difficult time in his life. For reasons discussed above, the previous conditions of release imposed by the Court

---

[10] The government also complains of Patel's use of a California driver's license in the name of "Chandan" Patel -- <u>not</u> Chandrakant Patel -- to secure financing from Rockport National Bank for McT's Lobster House. The government argues that Patel's use of the name/license of "Chandan Patel" in his dealings with the bank was more evidence of Patel's satisfactory mental health because of his ability to conduct a financial transaction with the bank and to devise a plan to avoid detection of his prior felony conviction. Patel's use of an alternate driver's license is problematic, however, even Bland reports her dealings with Patel were routine until, of course, she demanded -- and promptly received -- pre-payment. Likewise, Patel's financial dealings with the bank were not so sophisticated to carry out and, later, conclude given the degree of business experience Patel had gained from many years leasing, operating, and financing food, soft drink, and other business concerns.

10

should have been honored by Patel but, unfortunately, they were not. Patel has paid a price for his carelessness – more than 85 days in custody – and acknowledges his mistakes. The Court has Patel's undivided attention and, if released, he will abide by these and whatever other restrictions the Court imposes.

The government will argue that Patel was irresponsible, snubbed the Court's addition of EM to his initial conditions of release, fled, and therefore does not deserve a second chance. In other words, <u>because</u> Patel violated the August/September 2004 conditions of release, only detention can effectively "ensure" his return to Court.

Patel asks the Court to reject the government's position, fairly assess his package of release conditions, and account for the fact that Patel (and his family) clearly

understand the seriousness of this case and, currently, the difficulty in which he now finds himself with the Court.[11]

                                            Respectfully submitted,

                                            **CHARLES PATEL, JR.**
                                            by his attorney,

                                            **s/ Robert L. Peabody**
                                            Robert L. Peabody
                                            BBO No. 551936
                                            Nystrom, Beckman, & Paris
                                            10 St. James Avenue, 16th floor
                                            Boston, MA 02116
                                            617 778-9103

Dated: June 26, 2006

---

[11] Patel suffers from medical problems that include high blood pressure and Diabetes Mellitus. As a consequence of this condition, Patel has suffered kidney damage and his vision has been seriously compromised -- 20/60 vision in right eye and 20/80 in his left eye. Prior to his arrest in April 2006, he was receiving laser treatments to stop further deterioration of his vision. Should the Court decide to release him to a location in Boston, he would be able to receive better medical care than he is currently receiving in custody.

    Mr. Patel is also a strict vegetarian in accordance with his religious belief (Hinduism). Since being incarcerated, Patel has not received any accommodations for his dietary needs. If released to the custody of his wife, Reema, she would be able to provide Patel with an appropriate vegetarian diet in keeping with his religious beliefs.