UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CRIMINAL NO. 04-10230-JLT |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| CHARLES PATEL, JR. | ) |  |
| a/k/a CHANDRAKANT PATEL, JR. | ) |  |
| a/k/a CHANDU PATEL | ) |  |
| a/k/a CHANDO PATEL | ) |  |
|  | ) |  |

GOVERNMENT'S MOTION FOR DETENTION

The government asks the Court to detain Charles Patel, Jr. on the grounds that his misrepresentations to pretrial services and the Court, and his prior violations of his release conditions, including his flight, demonstrate that there are no conditions that will assure his appearance in this matter.

The parties have agreed to stipulate that, if called to testify, the witnesses whose interviews are documented in the FBI 302s attached to this motion would testify as described in the 302s. The parties therefore intend to rely on the attached 302's rather than calling witnesses during the hearing on June 29, 2006.

A. Patel's initial release conditions

On August 11, 2004, Patel told the pretrial services officer who interviewed him, and reiterated to the Court, through counsel, that he was so debilitated by dementia (likely caused by Alzheimer's disease, he claimed) that he could not function on his own, was under his wife's constant care, could travel only under the care of his cousin Gary Patel,

and could perform no more than the menial job of superficially looking at hotel rooms to determine if they were clean. Based on these representations, his counsel made the reasonable suggestion, with which the government agreed, that $20,000 cash bail would be sufficient to ensure that he appeared for future proceedings. The parties and the Court also agreed that it appeared that Patel needed a competency evaluation to determine whether the case could proceed.

  B.  Reality

    1.  San Francisco Probation

Shortly after Patel's initial appearance, FBI Special Agent Debra Robbins spoke to San Francisco Federal Probation Officer Esther Davis, who had been supervising Patel for two years, following the end of his prison sentence for bankruptcy fraud. As is described in the FBI 302 of that interview (Attached as "Davis 302"), Davis said that she had met Patel in person twice and spoken to him approximately 12 times during the past two years. She also met with him in person on August 13, 2004, for an exit interview, because his probation finished on August 16.

Patel told Davis that he worked as the vice president of construction for Fiesta Fresh Mexican Grill and gave Davis copies of his pay stubs. Patel never mentioned, nor did Davis observe, any problems with memory impairment or dementia. Davis never met, or had any dealings with Patel's wife. Patel never mentioned to Davis that he worked for a hotel or motel chain, nor did he mention his cousin Gary.

2.   Rockport National Bank

On August 26, 2004, Special Agent Robbins interviewed Maryann Bland, the vice president of commercial lending for Rockport National Bank, in Rockport, Massachusetts (attached as "Bland 302"). Bland explained that, in the Fall, 2003, she met with a California businessman, "Chandan" Patel (who used the nicknames "Charles" and "Chuck"), about financing his purchase of a Gloucester, Massachusetts restaurant called McT's Lobster House and Tavern. In December, 2003, after extensive negotiation with "Chandan" Patel and his attorney, the bank executed two loans for the purchase of the restaurant's property and assets and a $900,000 line of credit agreement. While "Chandan" Patel used his wife Reema's name on the liquor license and the names of his son, Robert, and father, Chhitabhai, the bank officials dealt only with "Chandan."

After closing the financing deal with the bank, "Chandan" Patel remodeled McT's and opened it for business in February, 2004. From that time until September, 2004, Bland stopped by the restaurant several times a week, and during the majority of those visits, "Chandan" Patel was there. He ran the restaurant and handled its banking, according to Bland, who described him as intelligent, knowledgeable, and charming.

At some point after Patel's initial appearance on August 11, 2004, Bland read the U.S. Attorney's Office's press release describing his bank fraud indictment and became concerned that Charles Patel, Jr. and "Chandan" Patel might be the same person. So Bland asked "Chandan," both over the phone and in person, if he was the same Charles

Patel that had been indicted; both times, he said that he was not – that the Charles Patel in the indictment was his cousin. But shortly thereafter, FBI agents gave Bland a copy of the mug shot that the Marshal's Service took of Patel on the day of his initial appearance, and Bland recognized the person in the picture as the bank's customer, "Chandan" Patel. The bank then drafted a letter demanding that Patel immediately close his accounts; Bland brought the letter to McT's restaurant, where she confronted Patel with the mugshot and asked him to sign the letter; and Patel acquiesced and agreed to sign the letter.

Chandan Patel is, in fact, Charles Patel's sister, and was interviewed by the FBI (report attached as "Chandan Patel 302"). She told the FBI that she has no involvement with McT's Lobster House or Rockport National Bank. The Massachusetts pretrial services report from Patel's August 11, 2004 interview, lists his sister's name as "Shannon," and it is not clear whether Patel was intentionally distorting the name or whether there was a transcription error caused by Patel's accent.[1]

During the course of obtaining the mortgage and loan from Rockport National Bank, Patel provided the bank a California drivers license with what appears to be his photograph, the name "Chandan Patel," a birth date in 1956, and an address of in Dublin, CA. Chandan Patel confirmed that the name and information on this drivers license is

---

[1] Because information in pretrial reports is confidential, the government does not have a copy to attach to this motion and is instead relying on notes that the assistant U.S. Attorney took during a review of the report.

hers but that the photograph is of Charles Patel. It is clear, therefore, that Patel used his sister's identity to obtain a fake driver's license, and then used the fake license and phony identity to borrow almost $1 million from Rockport National Bank. He continued this bank fraud scheme after his August 11, 2004 arraignment until the bank discovered the fraud and took steps to end its relationship with him.

    C.    Patel's flight

On September 7, 2004, the government filed a motion asking the Court to revoke Patel's release or revise his release conditions. Dkt. #7. In a September 22, 2004 Order, the Court denied the request to revoke Patel's release but revised his release conditions to include home detention with electronic monitoring, forthwith. Dkt. #9. As the defendant has described in his Opposition to Government's Motion for Detention, the pretrial services officer in California repeatedly tried to contact Patel to implement the electronic monitoring, but she could not reach Patel, and his wife, Reema, said that she did not know where he was. Ultimately, Pretrial Services reported Patel's non-compliance to the Court, which issued an arrest warrant.

On October 14, 2004, in an effort to locate the defendant, a California FBI agent interviewed Reema Patel (report attached as "Reema Patel 302"). She said that she and her husband had had an argument three weeks earlier; he had become angry and left the house; and she had not heard from him since. She assured the agent, however, that if she heard from her husband, she would call the FBI agent. She never did so.

Also on October 14, 2004, the same FBI agent interviewed Michael Patel, the defendant's brother. He said that he had not seen Charles Patel in approximately a month and did not know where he was. He added that the defendant had been "disbarred" from the family because he had "married outside the Patel family name and he ate beef." Michael Patel added that he would contact the FBI agent if Charles contacted him. He never did so.

In September, 2005, Steven Alikakos, of Toronto, Canada, contacted the U.S. Attorney's Office to inquire whether the Chuck Patel, with whom he had had a business meeting in July, 2005, was the Charles Patel that had been indicted in this district. Alikakos had learned of the indictment while doing a Google search on Patel (Alikakos 302 attached). An FBI agent then spoke to Alikakos and e-mailed him Patel's booking photo, which Alikakos identified as the Chuck Patel he had met. Alikakos, a commercial real estate agent, said that the meeting was to discuss Patel's interest in opening a restaurant in Toronto. When Alikakos asked Patel why he was looking to open a restaurant in Canada, Patel said he was just looking for a change from the U.S., which made Alikakos suspicious. In a second conversation with the FBI agent, Alikakos described Patel as "sharp as a tack" and as having an excellent memory (Alikakos 2nd 302 attached). The FBI attempted to follow up on the limited contact information Alikakos had for Patel but was unable to locate him.

In March, 2006, the U.S. Attorney's Office learned that Patel was scheduled to appear in April for a deposition in a civil lawsuit in Youngstown, Ohio. When Patel did appear on April 10, 2006 for that deposition, he was arrested.

## CONCLUSION

Charles Patel lied to Pretrial Services and the Court about his mental condition and employment status. He continued to engage in a bank fraud scheme while on pretrial release. And when the Court, concerned about this conduct, ordered him to be in home detention with electronic monitoring, he fled. He remained a fugitive for approximately 18 months and was arrested only because the government received information in advance about his whereabouts. For the above reasons, the government maintains that there are no conditions of release that will ensure Patel's appearance in this case.

                                                  Respectfully submitted,

                                                  MICHAEL J. SULLIVAN
                                                  United States Attorney

                        By:    /s/ Adam Bookbinder
                               Adam J. Bookbinder
                               Assistant U.S. Attorney

Dated: June 28, 2006

<u>CERTIFICATE OF SERVICE</u>

  I certify that this document filed through the ECF system, which will provide electronic notice to counsel as identified on the Notice of Electronic Filing.

               <u>/s/ Adam J. Bookbinder</u>
               Adam J. Bookbinder

Dated: June 28, 2006