UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CRIMINAL NO. 04-10230-JLT |
| v. | ) | |
| CHARLES PATEL, JR. | ) | |
| a/k/a CHANDRAKANT PATEL, JR. | ) | |
| a/k/a CHANDU PATEL | ) | |
| a/k/a CHANDO PATEL | ) | |

GOVERNMENT'S PROPOSED FINDINGS OF FACT
AND CONCLUSIONS OF LAW RELATING TO COMPETENCY

The government asks the Court to adopt the findings of fact and conclusions of law set out below and to ultimately conclude that the defendant, Charles Patel, is competent to stand trial.

PROPOSED FINDINGS OF FACT

A.  Procedural Background

Since his indictment, in 2004, Patel has claimed to be suffering from dementia caused by Alzheimer's disease. He has retained a psychiatrist, Dr. Rogoff, who has concluded, based on Patel's claimed inability to recall any events relating to the charges against him, that Patel is not competent to stand trial. Dr. Rogoff's 9/26/06 Report at 5. At the joint request of the parties, the Court appointed Dr. Russell Vasile to conduct a competency evaluation, and Dr. Vasile, in turn, retained Dr. Mark Greenberg to do neuropsychological testing.

A. <u>The Court-Ordered Competency Evaluation</u>

1. <u>Dr. Vasile's psychiatric evaluation</u>

Dr. Vasile interviewed Patel in January and April, 2007. Vasile 6/8/07 Rpt. at 1. In his June 8, 2007 report to the Court, Dr. Vasile first concludes that Patel is not mentally ill:

> In my clinical judgment there is no evidence of mental illness that would impair Mr. Patel's ability to cooperate rationally with his attorney. There is no evidence of psychosis, paranoia, major depression, mood disorder or agitated behavior that would in any way preclude his ability to establish a collaborative relationship with his attorney.

<u>Id.</u> at 11. Dr. Vasile notes, however, that the absence of mental illness does not necessarily resolve the competency question. <u>Id.</u>

Dr. Vasile then discusses the question of whether Patel is malingering, or faking, his claimed memory loss:

> It is noteworthy that the issue of Mr. Patel malingering cognitive dysfunction has been raised by the government. The basis of this allegation relates to Mr. Patel's observed conduct related to business dealings and other legal proceedings from 2003-2006. The observed behavior appeared to be entirely inconsistent with a dementia that was asserted to have had its onset several years before around 2000-2001.

<u>Id.</u> Dr. Vasile agreed with the defense expert, Dr. Rogoff, that the best way to assess the legitimacy of Patel's claimed memory loss was through neuropsychological testing, which Dr. Vasile asked Dr. Greenberg to perform. <u>Id.</u>

2. <u>Dr. Greenberg's testing</u>

Dr. Greenberg performed eight hours of objective testing on Patel in March and April, 2007. Greenberg 6/5/07 Rpt. at 1. In a 14-page report analyzing and summarizing the results of this testing, Dr. Greenberg reaches the following conclusions:

- Though superficially cooperative with the examination, Mr. Patel was clearly not putting forth his best effort on cognitive testing.  His self-presentation and pattern of psychometric responses was simply not credible. His testing profile was riddled with inconsistent patterns of responding, atypical and at times ludicrous responses. Id. at 3.

- As described in the automated VIP report, "This finding is unusual even for individuals with significant cognitive impairment and is consistent with the determination that he intentionally chose the incorrect responses."  Id. at 7-8.

- In the context of his indictment on criminal charges, his past anti-social conduct, and the obvious potential personal gain for currently being deemed incompetent to stand trial, it was concluded with a reasonable degree of professional certainty that Mr. Patel is now actively malingering. That is, he is consciously suppressing his true abilities and exaggerating impairment.  Id. at 3.

   3. Dr. Vasile's conclusions

Dr. Vasile's report concludes that the results of his own psychiatric evaluation and Dr. Greenberg's testing "are consistent with malingered cognitive deficits in the service of establishing a diagnosis of dementia" – in other words, Patel was faking memory impairment so that he would be diagnosed as suffering from dementia and would be found not competent to stand trial.  Vasile Rpt. at 13.  Because of Patel's pattern of not responding to questions about his ability to assist in his defense, however, Dr. Vasile was unable to definitively establish Patel's competence to stand trial.  Id.  Dr. Vasile adds: "In my judgment this failure to elaborate responses to my questions is consistent with the pattern of malingered responses described above."  Id.  Dr. Vasile concludes that he "therefore must leave the final decision as to Mr. Patel's competence to stand trial in the hands of the court."  Id.

   4. Dr. Rogoff's Supplemental Report

After reviewing the results of Dr. Greenberg's objective testing, defense expert Dr. Rogoff agreed with Dr. Greenberg and Dr. Vasile that these results support a conclusion that

3

Patel is, at least to some extent, malingering, or faking, his impairment. Dr. Rogoff 8/1/07 Supp. Rpt. at 2. Dr. Rogoff concludes, however, that this malingering does not necessarily mean that Patel does not also suffer from dementia. Id. Rather, he suggests that Patel may be both malingering and demented and, therefore, not competent to stand trial. Id. at 2-4.

  B. Patel's History of Feigned Dementia

Dr. Vasile's and Dr. Greenberg's conclusion that Patel is faking dementia is consistent with Patel's pattern of claiming incompetence when appearing in court in this case, while simultaneously operating restaurants and fleeing home detention.

    1. Patel's statements to pretrial services

Before his August 11, 2004 initial appearance in this case, Patel told the pretrial services officer who interviewed him that he was so debilitated by dementia (likely caused by Alzheimer's disease, he claimed) that he could not function on his own, was under his wife's constant care, could travel only under the care of his cousin Gary Patel, and could perform no more than the menial job of superficially looking at hotel rooms to determine if they were clean.[1]

    2. Reality

      a. San Francisco Probation

Shortly after Patel's initial appearance, FBI Special Agent Debra Robbins spoke to San Francisco Federal Probation Officer Esther Davis, who had been supervising Patel for two years, following the end of his prison sentence for bankruptcy fraud. See Davis 302 at 1 (Ex. 1 to

---

[1] Because information in pretrial reports is confidential, the government is not allowed to keep a copy of the report after the initial appearance. Thus, the government is relying on notes that the assistant U.S. Attorney took during a review of the report and cannot provide exact cites for this proposed finding.

Government's Request that Court Find Patel Competent to Stand Trial, Docket #47). Davis had met Patel in person twice and spoken to him approximately 12 times during the past two years. She also met with him in person on August 13, 2004, two days after his initial appearance in this case, for an exit interview, because his probation finished on August 16, 2004. Id.

Patel told Davis that he worked as the vice president of construction for Fiesta Fresh Mexican Grill and gave Davis copies of his pay stubs. Id. at 1-2. Patel never mentioned, nor did Davis observe, any problems with memory impairment or dementia. Davis never met, or had any dealings with Patel's wife. Id. at 2.

      b.     Rockport National Bank

On August 26, 2004, Special Agent Robbins interviewed Maryann Bland, the vice president of commercial lending for Rockport National Bank, in Rockport, Massachusetts. See Bland 302 (Ex.2 to Dkt. #47). Bland explained that, in the Fall of 2003, she met with a California businessman, "Chandan" Patel (who used the nicknames "Charles" and "Chuck"), about financing his purchase of a Gloucester, Massachusetts restaurant called McT's Lobster House and Tavern. Id. at 1. In December, 2003, after extensive negotiation with "Chandan" Patel and his attorney, the bank executed two loans for the purchase of the restaurant's property and assets and a $900,000 line of credit agreement. Id. at 1-2.

After closing the financing deal with the bank, "Chandan" Patel remodeled McT's and opened it for business in February, 2004. Id. at 2. From that time until September, 2004, Bland stopped by the restaurant several times a week, and during the majority of those visits, "Chandan" Patel was there. Id. He ran the restaurant and handled its banking, according to Bland, who described him as intelligent, knowledgeable, and charming. Id. at 4.

At some point after Patel's initial appearance on August 11, 2004, Bland read the U.S. Attorney's Office's press release describing his bank fraud indictment and became concerned that Charles Patel, Jr. and "Chandan" Patel might be the same person. Id. at 3. So Bland asked "Chandan," both over the phone and in person, if he was the same Charles Patel that had been indicted; both times, he lied and said that he was not. Id. But shortly thereafter, FBI agents gave Bland a copy of the mug shot that the Marshal's Service took of Patel on the day of his initial appearance, and Bland recognized the person in the picture as the bank's customer, "Chandan" Patel. Id. The bank then drafted a letter demanding that Patel immediately close his accounts; Bland brought the letter to McT's restaurant, where she confronted Patel with the mugshot and asked him to sign the letter; and Patel acquiesced and agreed to sign the letter. Id.

### 2. Patel's flight

On September 7, 2004, after discovering that Patel had taken a $900,000 bank loan and was operating a restaurant in Gloucester, under the name "Chandan Patel," the government filed a motion asking the Court to revoke Patel's release or revise his release conditions. Dkt. #7. In a September 22, 2004 Order, Magistrate Judge Collings denied the request to revoke Patel's release but revised his release conditions to include home detention with electronic monitoring, forthwith. Dkt. #9. The pretrial services officer in California repeatedly tried to contact Patel to implement the electronic monitoring, but he was not at his home and she could not find him. Ultimately, Pretrial Services reported Patel's flight to the Court, which issued an arrest warrant. Patel became a fugitive and remained one until his arrest on April 10, 2006.

In September 2005, Steven Alikakos, of Toronto, Canada, contacted the U.S. Attorney's Office to inquire whether the Chuck Patel, with whom he had had a business meeting in July,

2005, was the Charles Patel that had been indicted in this district.  See Alikakos 302 at 1 (Ex. 3 to Dkt. #47).  Alikakos had learned of the indictment while doing a Google search on Patel.  Id.  An FBI agent then spoke to Alikakos and e-mailed him Patel's booking photo, which Alikakos identified as the Chuck Patel he had met.  Id. at 2.  Alikakos, a commercial real estate agent, said that the meeting was to discuss Patel's interest in opening a restaurant in Toronto.  Id. at 1.  When Alikakos asked Patel why he was looking to open a restaurant in Canada, Patel said he was just looking for a change from the U.S., which made Alikakos suspicious.  Id.  Alikakos described Patel as "sharp as a tack" and as having an excellent memory.  See Alikakos 2nd 302 (Ex. 4 to Dkt. #47)).

In March, 2006, the U.S. Attorney's Office learned that Patel was scheduled to appear in April for a deposition in a civil lawsuit in Youngstown, Ohio.  When Patel did appear on April 10, 2006 for that deposition, he was arrested.

    C.    Factual Conclusions

Dr. Vasile's and Dr. Greenberg's expert evaluations of Patel are entirely consistent with the pattern of behavior documented in the FBI 302s attached to the Government's Request that Court Find Patel Competent to Stand Trial.  Since the time of his indictment in 2004, Patel has claimed to be largely incapacitated by Alzheimer's disease.  All the while, he borrowed almost $1 million to open and run a restaurant in Gloucester, he fled the country rather than submit to home detention and electronic monitoring, and he had business meetings about opening a restaurant in Toronto.  These actions confirm Dr. Vasile's and Dr. Greenberg's conclusions that Patel is malingering, or faking, dementia, in an effort to persuade the Court that he is not competent.

CONCLUSIONS OF LAW

In deciding whether the defendant is competent to stand trial, the Court must decide whether he "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether he has a rational as well as factual understanding of the proceedings against him." Dusky v. United States, 362 U.S. 402, 402 (1960). On the question of who has the burden of proof in competency proceedings, the Supreme Court has stated, albeit in dicta, that "Congress has directed that the accused in a federal prosecution must prove incompetence by a preponderance of the evidence."[2] Cooper v. Oklahoma, 517 U.S. 348, 362 (1996) (holding that Oklahoma requirement that defendant prove incompetence by clear and convincing evidence violated due process). The Supreme Court has also noted, however, that the question of who bears the burden of proof will affect the outcome of the analysis "only in a narrow class of cases where the evidence is in equipoise; that is, where the evidence that a defendant is competent is just as strong as the evidence that he is incompetent." Medina v. California, 505 U.S. 437, 449 (1992).

Here, the Court need not decide which party bears the burden of proof, because the evidence is not in equipoise. Even if the burden were on the government to prove, by a preponderance of the evidence, that the defendant is competent to stand trial, the government has satisfied this burden. The evaluation done by Court-appointed expert Dr. Vasile, with assistance from Dr. Greenberg, concludes that Patel is malingering. When this evaluation is combined with the evidence of Patel's conduct immediately before and then after his arrest, there is

---

[2] It appears that the First Circuit has not addressed the question of which party bears the burden of proof in this situation.

overwhelming evidence that Patel is competent to stand trial and is attempting to manipulate the Court in an effort to avoid responsibility for his crimes. That Patel has told his counsel that he does not remember any of the transactions at issue in this case does not provide any meaningful evidence of incompetence. Given the other evidence, these statements appear to be merely an additional effort by Patel to appear incompetent.

## CONCLUSION

For the above reasons, the government asks the Court to find the defendant competent to stand trial.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By:   /s/ Adam Bookbinder
Adam J. Bookbinder
Assistant U.S. Attorney


## CERTIFICATE OF SERVICE

I certify that this document filed through the ECF system, which will provide electronic notice to counsel as identified on the Notice of Electronic Filing.

 /s/ Adam J. Bookbinder
Adam J. Bookbinder

Dated: October 17, 2007