# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Criminal No. 04-10230-JTL** |
| | ) | |
| **CHARLES PATEL, JR.** | ) | |
| | ) | |
| **Defendant.** | ) | |

## DEFENDANT CHARLES PATEL'S MEMORANDUM IN SUPPORT OF PROPOSED FINDINGS OF FACT RE: PATEL'S COMPETENCY TO STAND TRIAL

Defendant Charles Patel (Patel) submits this Memorandum at the invitation of the Court in support of his Proposed Findings of Fact regarding his competency to stand trial.

By now, the Court has had the chance to digest a significant amount of information assessing the extent of Patel's cognitive deficits and his Dementia. This collective of knowledge embodies the following reports: a June 10, 2004 letter submitted to the government by Dr. William T. Riley, M. D. (Patel's psychiatrist) shortly before Patel's August 2004 indictment; a September 26, 2006 evaluation of Patel's competency to stand trial by Dr. Jerome Rogoff, M. D. (defense expert); a June 8, 2007 evaluation of Patel's competency to stand trial by Dr. Russell G. Vasile, M. D. (court-appointed expert); a June 8, 2007 neuropsychological assessment of Patel by Dr. Mark S. Greenberg, Ph. D.; and, finally, an August 1, 2007 supplemental report prepared by Dr. Jerome Rogoff, M. D. responding to the findings and conclusions of Dr. Vasile and Dr. Greenberg.

In addition, the Court has reviewed proposed findings of fact prepared by the government and defendant highlighting the most salient facts gathered and conclusions

reached by the respective experts about Patel's current mental health and, thus, his competency to stand trial. Finally, the Court has allowed the parties to present their views about the nature and extent of his Dementia and whether or not Patel can effectively assist counsel in his defense.

      1.      **Patel is demented.**

**Dr. William T. Riley, M.D.**

Patel has been suffering from a gradual dementing process since 2002 and, as a result, his mental capacity – ability to remember people, places, and things – has been steadily deteriorating. In 2004, Patel sought treatment for his condition by seeing Dr. William T. Riley, M.D., of Menlo Park, CA (Riley). Riley, a Psychiatrist, saw Patel nine (9) times between March 11, 2004 and August 12, 2004 during which time in medical notes that, later, were provided to Drs. Rogoff, Vasile and Greenberg as part of their own evaluations, Riley documented Patel's symptoms, his observations of Patel, his diagnosis, and a treatment regimen. Patel told Riley that he had "lost some memory" the past two years, had trouble remembering names, dealing with numbers, and was getting lost. Riley diagnosed Patel with a progressive dementing process that, in his opinion, was irreversible and incapacitating and prescribed Aricept (5 mg.) an Alzheimer's drug, to treat his condition. A month later, Patel's dosage was increased to 10 mg. Several weeks later all medication was terminated as ineffective.

Later, in a June 10, 2004 letter to the government, Riley reported that he had "evaluated and treated Patel [for] Dementia" since March 11, 2004 and that after a "thorough examination, review of medical and family history and personal interviews with [brother] and his wife," his primary medical diagnosis was that Patel suffered from

"Dementia, probably Alzheimer's, meeting all the DSM IV criteria." Based on these findings, Riley concluded that Patel lacked the capacity to manage his affairs "in his own best interest." Patel also lacked the insight or judgment to participate in legal proceedings. In sum, Riley found that Patel was incompetent. (*A copy of Dr. Riley's June 10, 2004 letter referencing diagnosis and evaluation of Patel is attached as **Attachment A**.*)

**Dr. Jerome Rogoff, M.D.**

Based on Riley's pre-indictment diagnosis and findings concerning Patel's mental health and competency and counsel's impressions of Patel based on early contact with his client, Dr. Jerome Rogoff, M.D. (Rogoff) was retained to evaluate Patel's competency to stand trial and assess Patel's current mental capacity. Rogoff met with Patel at the Norfolk County Correctional Center in Dedham, MA where Patel has been held since April 2006. Rogoff, likewise, concluded that Patel suffered from Dementia that impaired his mental functioning and, in particular, his memory.

Rogoff based his diagnosis on his interview and evaluation of Patel, historical information related by Patel's brother and wife, Patel's father's previous diagnosis of Dementia in 2001, and Riley's June 2004 diagnosis of Dementia and subsequent treatment of Patel. According to Rogoff, Patel understood the workings of the Court, the consequences of a trial and had the wherewithal to cooperate with his attorney. However, Patel's impaired memory and moderate to moderately severe Dementia prevented Patel, in Rogoff's opinion, from providing counsel with enough meaningful information about the facts of this case – a complex check kiting scheme in 1999 involving multiple

transactions between different banks – for counsel to understand what happened in 1999 and/or develop a defense to the charges.[1]

Accordingly, Rogoff – like Riley -- found Patel <u>not</u> competent to stand trial or even able to process and understand information sufficiently to provide informed consent at important junctures in the case such as accepting/rejecting a plea offer from the government.

**2.     Is Patel malingering?**

**Dr. Russell G. Vasile, M. D.**

In response to Patel's September 26, 2006 motion asking the Court to find Patel incompetent to stand trial, the Court directed Dr. Russell G. Vasile, M.D. (Vasile) to further evaluate Patel to assess his mental state and competency to stand trial. Vasile met and interviewed Patel on two occasions in 2007 to assess his competency -- January 29 and April 30 – and either reviewed or had access to much of the same historic data that Riley and Rogoff had previously reviewed.

Like Rogoff, Vasile found no evidence of mental illness affecting Patel's basic understanding of the legal process or his ability to engage in a "collaborative relationship" with his attorney. However, based on Vasile's interview of Patel and the results of a Mini Mental Status Exam Vasile he administered to Patel, Vasile found that Patel's competence to stand trial was "called into question by his apparent inability to recall meaningful details related to the actions that lead to the indictment against him."

---

[1]     Rogoff's evaluation of Patel also noted that Patel did not smile much and that he presented as depressed although he lacked the signs/symptoms of Major Depression. Rather, according to Rogoff, Patel's presentation was more consistent with so-called "pseudo-depression" in that he appeared "empty," lacked emotion giving a flat affect, and seemed distant and detached during the interview.  Pseudo-Depression, according to Rogoff, is a symptom of Dementia and is identifiable in patients who are demented but present as depressed.

In particular, Vasile noted that Patel's stated inability to recall any transactions at issue in his case "raises questions" whether Patel can "meaningfully assist" his attorney in defending him.

At the same time, Vasile's reading of Patel's neuropsychological test results previously administered by Dr. Mark S. Greenberg, Ph.D. (Greenberg), suggested to him that Patel was faking or "malingering" his memory loss to support earlier diagnoses of Dementia. Accordingly, Vasile raised the question whether Patel's Dementia really precluded him from recalling events in this case and/or assisting counsel mount a defense to the charges. Based on these contradictory observations, Vasile was unable to "precisely define" Patel's cognitive status (memory) mental status or the extent of his Dementia because of Patel's limited responses to that, later, were provided to Drs. Rogoff, Vasile and Greenberg as part of their own evaluations Vasile's questions about his ability to assist counsel in his defense. Accordingly, Vasile could not give the Court a definitive opinion on the issue whether Patel is competent to stand trial leaving that decision, ultimately, to the Court.

3. **Patel Presents a complex pictured explained by combination of conditions.**

Sufficient evidence has been collected over the course of multiple evaluations of Patel by multiple doctors since 2004 to support the diagnosis that Patel is experiencing moderate to moderately severe cognitive decline (somewhere between early to mid-stage Alzheimer's Disease) and is demented. Riley's diagnosis and decision to treat Patel for Dementia with prescription medicines during the six month period in 2004, family observations of Patel's memory loss and confusion, his father's Alzheimer's diagnosis in 2001, and Rogoff's 2006 evaluation and diagnosis that Patel suffered from a "dementing

process" and experienced deteriorating mental function when, taken all together, indicate that Patel is mildly to moderately demented.

At the same time, Greenberg's neuropsychological test results relied upon by Vasile suggest two possible explanations. Patel's lackluster and detached performance was either indicative of someone disengaged or apathetic to the testing process, or characteristic of someone exhibiting "suppressed responding" or answering questions incorrectly on purpose, that is malingering.  In other words, Patel's responses were explainable either by an apathetic approach to Greenberg's testing or a knowing attempt to do poorly.

Which is it then?  Is Patel demented and not malingering, or, is Patel malingering and not demented? Greenberg – and to a lesser extent Vasile who admits he is unsure -- would have it that Patel is fine and faking his Dementia. Rogoff correctly points out that there is no "scientific reason to embrace such a dichotomy" considering the multiple psychiatric evaluations of Patel conducted since 2004.

Rogoff's observation that Patel, in reality, presents a complex picture explained by a combination of conditions and not one condition or another is compelling and makes sense.  In part, Patel suffers from mild to moderate Dementia (resulting, likely, from Alzheimer's). In part, Patel also presents an apathetic, flat affect symptomatic of his Dementia (Pseudo-Depression) [2]; a condition not inconsistent with some test results

---

[2]     As an attachment to his August 1, 2007 response to the June 2007 reports of Dr. Vasile and Dr. Greenberg, Dr. Rogoff included a November 2005 article from Psychiatric Times, "Apathy and it is Treatment in Alzheimer's Disease and other Dementias," Paul H. Malloy, Ph.D. and Patricia A. Boyle, Ph.D.  The article points out that "apathy is the most common neuropsychiatric symptom reported among individuals with Alzheimer's disease, affecting approximately 70% of patients in the mild to moderate stages and increasing in severity as the

obtained by Greenberg and certain of Greenberg's observations of Patel during the testing process.[3]  Finally, in part, Patel exhibits some calculated malingering intended, likely, to make himself appear worse off than he actually is.[4]  To suggest otherwise and, instead, rely on a single, definitive diagnosis of Patel's mental condition while ignoring all others obtained in this case contradicts the thorough and competent mental health evaluations of Patel prepared by four (4) different and experienced practitioners.

   **4.   Patel's Dementia prevents him from assisting his attorney.**

   According to Dr. Rogoff, Patel's Dementia has affected his memory and compromised his ability to recall the facts and circumstances involved in the alleged check kiting scheme that he is alleged to have committed in 1999 that involved multiple bank accounts in multiple cities. Patel cannot adequately describe the case or his 1999 conduct to his attorney to enable him to properly prepare the case or fashion triable defenses.

   For example, counsel made inquiry of Patel about the day-to-day management of accounts in 1999; reasons for using multiple operating accounts; his father's role in the management of accounts; why large deposits were moved between accounts with such frequency; why deposits "realized" during the float were being wired to other Patel

---

illness progresses." *(A copy of the November 2005 Malloy/Boyle article is attached as Attachment B.)*

[3]     In the Validity Indicator Profile Interpretive Report, dated 03/30/07, see Page 5, evaluating Patel's competency to stand trial and prepared by Greenberg in this matter, Greenberg remarked that Patel's responses were probably made "without regard" or "irrelevantly" to item content and that this type of performance "may reflect a lack of desire to perform well resulting from apathy regarding the evaluation process.

[4]     Even if Patel is malingering to some extent, it certainly does not mean that he is not suffering from Dementia and the effects of moderately severe cognitive decline or that he is capable of remembering everything that occurred in 1999 so that he can assist his attorney in mounting an adequate defense.

accounts; and how the wired funds were spent after receipt by third party banks. Further inquiry included how Patel's businesses were structured, their finances, and whether any Patel business -- especially those business accounts involved in the scheme -- experienced cash flow problems in 1999.

Patel had no recall of his day-to-day handling of these accounts in 1999. Patel could not recall whether he, his father, or others made deposits; whether deposits were accomplished by mail or by hand; how checks endorsed by Patel were deposited the same day on different coasts; why deposits between banks were made with such frequency; and why these banks were wiring funds to the third party banks. Likewise, questions about the financial structure/health of the businesses and whether they were experiencing cash flow problems also generated answers lacking any useful information about the finances of restaurant operations in 1999. (*A copy of the September 4, 2007 Affidavit of Robert L. Peabody, Esq. discussing in greater detail Patel's capacity to assist counsel is attached as **Attachment C**.*)

Patel's Dementia has compromised his recall of important events eight years ago and at issue in this case. This demonstrates that he can be of little assistance to counsel at this time and is simply not competent to stand trial in this matter.[5]

_____

[5]    18 U.S.C. §4241 (d) (1) (2) -- *Determination and Disposition* – provides that if, after hearing, the court finds by "a preponderance of the evidence" that defendant is suffering from a mental disease rendering him mentally incompetent such that he cannot "assist properly in his defense," the court "shall commit the defendant to the custody of the Attorney General" who will hospitalize him for treatment in a suitable facility for a reasonable period of time not to exceed four months and as is necessary to determine whether his mental condition improves so that the trial may proceed, or the charges against him are disposed of, whichever is earlier.

18 U.S.C. §4246 (e) – *Discharge* – provides that when the director of the facility at which defendant is hospitalized under 18 U.S.C. §4241determines that the person has recovered to the extent that his release would not create a substantial risk of injury or property damage to another the court shall order – either immediately or after hearing -- the discharge of the defendant.

**5.  Patel's contacts with U. S. Probation and Rockport National Bank personnel in 2003 and 2004 do not belie his Dementia.**

The government insists that Patel's Dementia is a ruse and that proof of his malingering can be found from Patel's documented interactions with U. S. Probation Officer Ester Davis (Davis) in San Francisco during the Summer of 2004, and Maryann Bland (Bland), an Officer with the Rockport National Bank in 2003 and 2004.

Patel states that his limited contact with Davis and Bland more than three and four years ago provides no insight into the state of Patel's mental health or the nature and extent of his Dementia either then or now. Neither Davis or Bland are health care professionals. Similarly, Davis spent brief and limited periods of time with Patel in her office during what few visits he made to the Probation Office in San Francisco while on Supervised Release; hardly the time required for a federal probation officer, let alone physician, to diagnose Dementia or assess the extent of Patel's cognitive or mental functioning.

Bland's experience as a commercial banker hardly qualifies her to assess Patel's mental health in 2003 or, more pertinently, his mental status and capacity to assist counsel with his defense in 2007. Besides, after 25 years in the restaurant business, Patel's capacity to negotiate basic bank financing instruments with Bland – a real estate loan and line of credit – was "standard procedure" for Patel and did not overtax his faculties to engage in routine financial dealings with Bland and her bank. In other words, bank financing was not complicated. Patel had been financing restaurant purchases,

*(Copies of 18 U.S.C. §4241(d), Determination and Disposition, and 18 U.S.C. §4246 (e), Discharge, are attached as **Attachment D**.)*

build-outs, and general operations for years. Such transactions were easily accomplished by Patel despite the slow onset of Dementia, a deteriorating memory, and his general cognitive decline that Dr. Riley diagnosed and was treating during this same period.[6]

### 6.  Conclusion

Based upon the medical findings and reasoning set forth above and/or other evidence the Court finds persuasive, Patel respectfully asks the Court to find that he is not competent him to stand trial in this case because he is demented and, as such, cannot assist properly in his defense to the pending charges.

> Respectfully submitted,
>
> **CHARLES PATEL, JR.**
> By his attorney,
>
> **s/ Robert L. Peabody**
> Robert L. Peabody
> BBO No. 551936
> Nystrom, Beckman, & Paris
> 10 St. James Avenue, 16th floor
> Boston, MA 02116
> 617 778-9103

Dated: October 18, 2007

---

[6] For the Court's information, in February 2003 when Patel and wife Rheema Patel first opened McT's Lobster House in Gloucester, MA, a general manager, a senior assistant manager, and two assistant managers were hired to run the "front of the house" (reservations, seating, waiters) as well as operate McT's on a day-to-day basis. The GM's responsibilities included all financial matters – food cost, payroll, hiring and firing, and operations.  A head chef or kitchen manager was also hired along with daytime and nighttime assistant kitchen managers. Their duties included food ordering, quality control, and general kitchen operations. In total, McT's had seven (7) fulltime staff running every facet of the restaurant operation.  Other than being there from time to time to oversee things at McT's Patel and his wife had no duties or responsibilities running the restaurant.

CERTIFICATE OF SERVICE

I, Robert L. Peabody, pursuant to Local Rules 5.2 (b) and 5.4 (c), hereby certify that a true copy of the above document was served on Assistant U.S. Attorney Adam J. Bookbinder by electronic means on October 18, 2007.

s/ Robert L. Peabody